**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marvin JAMES, Defendant-Appellant.**

**No. 82–2607.**

United States Court of Appeals, Tenth Circuit.

Feb. 29, 1984.

Gene Stipe, McAlester, Okl. (Anthony M. Laizure, McAlester, Okl., with him on brief) of Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, McAlester, Okl., for defendant-appellant.

Gary L. Richardson, U.S. Atty., Muskogee, Okl. (Donn F. Baker, Asst. U.S. Atty., Muskogee, Okl., with him on brief), for plaintiff-appellee.

Before McWILLIAMS and LOGAN, Circuit Judges, and COOK, District Judge.[*]

LOGAN, Circuit Judge.

Defendant Marvin James, a former county commissioner in McIntosh County, Oklahoma, appeals his conviction on twenty-three counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of extortion, in violation of 18 U.S.C. § 1951. Defendant asserts six grounds of error: (1) the trial court's voir dire of prospective jurors was inadequate in light of the mas-

sive pretrial publicity; (2) the trial court should have questioned each juror individually concerning exposure to pretrial publicity; (3) the mailing of county warrants to vendors did not constitute mail fraud; (4) insufficient evidence existed to show that defendant unlawfully interfered with interstate commerce; (5) the trial court gave an improper instruction on the government's burden of proving a nexus with interstate commerce; and (6) the court should have declared a mistrial because of prosecutorial misconduct. We affirm.

James' indictment resulted from a three-year investigation of corrupt practices of Oklahoma county commissioners. James was charged with devising a scheme to defraud the citizens of McIntosh County by depriving them of their right to have county business conducted free from corruption and undue influence. Specifically, James was convicted for receiving kickbacks in return for placing orders for road and bridge building materials and supplies with certain vendors. All of the issues raised on appeal except for the issue of prosecutorial misconduct have been considered by this Court in other cases involving Oklahoma county commissioners. Since there are no significant factual distinctions between those cases and this one, our disposition of all issues except that of prosecutorial misconduct is controlled by those cases.

I

■ James argues that the trial court conducted an inadequate voir dire because the vast majority of jurors had read or heard about the ongoing investigation of county commissioners. He asserts that the voir dire was not sufficiently broad to permit the trial court to assess the effect of this publicity on the jurors' impartiality and that each juror should have been questioned individually out of the presence of the other jurors. Virtually identical contentions were made and rejected in *United States v. Whitt*, 718 F.2d 1494 (10th Cir.1983), and

[*] Honorable H. Dale Cook, Chief United States District Judge for the District of Oklahoma, sitting by designation.

*United States v. Primrose,* 718 F.2d 1484 (10th Cir.1983). Based on our review of the record, which indicates that none of the jurors were exposed to pretrial publicity specifically mentioning James' name, and on the authorities and analysis set out in *Whitt,* we conclude that the voir dire was adequate.

## II

James asserts that the government failed to show the mailings in this case were in furtherance of a scheme to defraud. He argues that because the bribe payments were before or after the purchases, he was not scheming to defraud at the time of the payments. He also asserts that because the county was compelled to mail warrants to pay for materials and supplies the mailings fall outside the scope of the mail fraud statute under *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). We have already considered and rejected virtually identical arguments in similar factual contexts in *Primrose,* 718 F.2d at 1489–91, and *United States v. Gann,* 718 F.2d 1502, 1504 (10th Cir.1983).

James contends that the evidence on the extortion counts failed to establish the effect on commerce required under the Hobbs Act, and that the trial court committed prejudicial error by instructing the jury that if "any supplies, materials, or equipment [were] purchased or obtained" from outside Oklahoma and brought into the state as a result of an extortionate transaction, then the government would have carried its burden of proof on nexus with interstate commerce. We dealt with similar contentions in *United States v. Boston,* 718 F.2d 1511 (10th Cir.1983), and *Whitt,* 718 F.2d at 1500–01. On the basis of the authorities and analyses set out in those cases, we conclude that James' arguments are meritless.

## III

■ Finally, James argues that the trial court erred in not granting a mistrial for prosecutorial misconduct. On cross-examination of McIntosh County Clerk Ian War-

ren defense counsel asked if he knew of defendant's reputation in the community. Warren responded that James' reputation was excellent. On redirect examination the prosecutor asked, "Do you think if the people of McIntosh County as a whole knew if the evidence was, we'll say, or if it was determined that Marvin James has been taking kickbacks ... that his reputation would be one for honesty and integrity in the community"? In *United States v. Polsinelli,* 649 F.2d 793, 795 (10th Cir.1981), we held it was improper for the government to ask such questions because they are based on the assumption that the defendant is guilty of the crimes for which he is being tried. *See also United States v. Candelaria-Gonzalez,* 547 F.2d 291, 294–95 (5th Cir. 1977). In *Polsinelli* the same objectionable question was asked of two of defendant's character witnesses, and in *Candelaria-Gonzalez* four defense character witnesses were asked the same hypothetical question resting on the assumption of guilt. Here, the objectionable question was only posed to the government's first witness, who was not a reputation witness for the defendant. James subsequently put on nineteen character witnesses to vouch for his good reputation and the prosecution asked none of these witnesses a hypothetical question based on the assumption of guilt.

The second allegedly prejudicial question the government asked one of its witnesses was, "You knew Marvin James was on the take, didn't you"? Defendant asserts that this was an inappropriate reference to his character. *See United States v. Freeman,* 514 F.2d 1314, 1319 (D.C.Cir.1975). In *Freeman* the prosecutor made reference in closing argument to the defendant's background which was suggestive of guilt. The court held that the references to defendant's background were irrelevant to the issues in the case and thus prejudicial and impermissible.

■ A third instance of alleged misconduct occurred during cross-examination of a defense witness, Clyde Parker. The prosecutor asked Parker if he knew of grand jury testimony to the effect that Parker

468

had been taking kickbacks. We agree with defendant that this remark refers to facts outside the record and is therefore improper.

 We have reviewed all of these questions in the context of the record. We note that the trial court sustained objections to all of the questions (in one instance itself making the objection "on behalf of the defense counsel"), directing the witness not to answer, and, with respect to the last two, instructing the jury to disregard the remarks. While we agree that at least two of the questions were improper they do not require reversal. In *Marks v. United States,* 260 F.2d 377, 383 (10th Cir.1958), *cert. denied,* 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959), this Court stated,

> "It is not all misconduct or improper argument that will require granting a new trial or a reversal on appeal. It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal."

There was abundant evidence of guilt in the record, and we believe the trial court's actions were sufficient to prevent prejudice in this case. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

AFFIRMED.